IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-00536-PAB-MJW

ADMINISTRATIVE COMMITTEE OF THE NORTHROP GRUMMAN SAVINGS PLAN,

    Plaintiff,

v.

KENNETH FOY LANKFORD and
THE ESTATE OF TERRY T. LANKFORD,

    Defendants.

_____

**ORDER**
_____

    This matter is before the Court on the Motion for Summary Judgment and Request for Court to Release Funds Held in the Court Registry [Docket No. 43] filed by defendant The Estate of Terry T. Lankford (the "Estate"). The Court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1). No party has responded to the Estate's motion, and plaintiff Administrative Committee of the Northrop Grumman Savings Plan ("the Plan") takes no position on the motion. Docket No. 43 at 1.

**I. BACKGROUND**

    This case concerns the disbursement of funds from the retirement account (the "account") of Terry T. Lankford ("Ms. Lankford"). Ms. Lankford named her husband, defendant Kenneth Lankford, as the primary beneficiary of the account. Docket No. 43-1 at 3. In addition, Ms. Lankford named three secondary beneficiaries, Clara Trout (25%), Richard Trout (25%) and Timothy Lankford (50%). *Id.* On October 9, 2014, Timothy Lankford disclaimed his 50% interest in the account. Docket No. 43 at 2, ¶ 5;

*see also* Docket No. 43-1 at 9-11.  Clara Trout passed away on October 17, 2014, and Carla Trout was named executor of her estate.  Docket No. 43 at 3, ¶ 8.

Ms. Lankford died in November 2013 from gunshot wounds.  Docket No. 43-1 at 1.  Her death was ruled a homicide.  *Id.*  On November 10, 2013, Kenneth Lankford was arrested and charged with Ms. Lankford's murder.  Docket No. 43 at 3, ¶ 9; *see also* Docket No. 43-1 at 15.  On February 26, 2014, the Plan initiated this action by filing a complaint in interpleader.  *See* Docket No. 1.  The Plan claimed that, on November 22, 2013, it received a fax from a law firm representing Ms. Lankford's family.  Docket No. 1 at 3, ¶ 14.  The fax requested that no distributions be made from the Plan "given her murder by her husband and concerns about possible duress in selecting the beneficiaries" and contended that, because Kenneth Lankford had been charged with Ms. Lankford's murder, he lacked a valid and enforceable beneficiary interest in the account's proceeds.  *Id.* ¶¶ 14-15.  In light of the conflicting claims to the account's proceeds, the Plan requested leave to deposit the balance of the account, together with interest accrued, to the Clerk of the Court.  *Id.* at 4.  On August 11, 2014, the Plan deposited the account funds into the Court Registry.  Docket No. 43 at 3, ¶ 12.  Kenneth Lankford did not answer or otherwise respond to the complaint, and the Clerk of the Court entered default as to Kenneth Lankford on December 16, 2014.  Docket No. 42.

On August 21, 2014, Kenneth Lankford pled guilty to Ms. Lankford's murder and was sentenced to life imprisonment without parole.  Docket No. 43 at 3, ¶ 10; *see also* Docket No. 43-1 at 21-22.  On December 19, 2014, Magistrate Frances Renae Johnson

of the District Court for the County of El Paso, Colorado granted Carla Trout's "Motion for Determination that Kenneth Foy Lankford Committed a Felonious Killing and May Not Received Statutory Benefits, Distribution of Estate Assets, or Other Property Pursuant to C[olo]. R[ev]. S[tat]. 15-11-803" in a probate action regarding Ms. Lankford's estate.  Docket No. 43-1 at 23.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

However, "[w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998))

(internal quotation marks omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).

By failing to file a response to defendants' summary judgment motion, the Plan "waive[d] the right to respond or to controvert the facts asserted in the summary judgment motion." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). However, the Court is nonetheless required to "make the specific determinations required by [Rule 56 and] properly grants summary judgment pursuant to Rule 56 only if the motion demonstrates no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Id.* at 1196.

## III. ANALYSIS

### A. Appropriateness of Interpleader

"Interpleader is a form of joinder open to one who does not know to which of several claimants it is liable." *Amoco Prod. Co. v. Aspen Group*, 59 F. Supp. 2d 1112, 1114 (D. Colo. 1999) (citation omitted). "An interpleader action typically proceeds in two stages. During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader. . . . During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and

trial." *U.S. v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (citation omitted).

Neither party has formally requested that the Court perform its first stage analysis. Although typically the party who files a complaint in interpleader requests such relief by filing a formal motion, "[t]here is no set procedure for conducting the first stage of interpleader." 7 Charles Wright, Arthur Miller & Mary Kane, Fed. Practice & Procedure § 1714 (3d ed. 2001). Accordingly, the Court construes the Estate's motion for summary judgment as including a motion that the Court find that the Plan properly invoked interpleader.

The Court first finds that it has jurisdiction over this action, as the Plan initiated this action in its role as fiduciary to determine the proper disbursement of the proceeds of the account. *See Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 277 (3d Cir. 2007) (holding that the court had federal question subject matter jurisdiction over interpleader action brought by ERISA plan fiduciary to "ensur[e] that funds are disbursed to the proper beneficiary") (citation omitted).

Next, the Court finds that the Plan was "actually threatened with double or multiple liability." *High Tech. Prods., Inc.*, 497 F.3d at 641; *see also Indianapolis Colts v. Mayor and City Council of Baltimore*, 733 F.2d 484, 486 (7th Cir. 1984) (noting that a complaint in interpleader requires the court to decide "whether the stakeholder legitimately fears multiple vexation directed against a single fund") (citation omitted). The Plan alleged, and the Estate admitted,[1] that it received a fax from a law firm

---

[1] Docket No. 31 at 2, ¶ 14.

5

representing Ms. Lankford's family that informed the Plan that Kenneth Lankford had been charged with Ms. Lankford's murder and that asked the Plan not to make any disbursements from the account. Docket No. 1 at 3, ¶¶ 14-15. At the time the Plan initiated this action, Kenneth Lankford had not yet been convicted and sentenced. *Compare* Docket No. 1 (complaint dated February 26, 2014), *with* Docket No. 43-1 at 21-22 (sentence order dated August 21, 2014). Thus, the Plan reasonably feared exposure to claims from multiple parties whose interests were adverse to one another. The Plan, therefore, properly invoked interpleader.

### B. The Estate's Motion

The Court, having reviewed the Estate's uncontested motion and supporting documents, finds that it is undisputed that Kenneth Lankford has forfeited his interest in the account. Colo. Rev. Stat. § 15-11-803(3)(a) provides that a felonious killing of a decedent revokes any "disposition or appointment of property made by the decedent to the killer in a governing instrument." A felonious killing is conclusively established after "all right to appeal has been waived or exhausted following the entry of a judgment of conviction establishing criminal accountability for the felonious killing of the decedent[.]" *Id.* § 15-11-803(7)(a). The District Court for the County of El Paso, Colorado recognized that Kenneth Lankford's felonious killing of Ms. Lankford forfeited any interest he had in any of the assets of Ms. Lankford's estate. Docket No. 43-1 at 23.

The Court takes judicial notice of this order[2] and concludes that Kenneth Lankford's interest in the account has been extinguished.

The Court further finds that it is undisputed that Timothy Lankford disclaimed his 50% interest as a secondary beneficiary in the account.  Docket No. 43 at 2, ¶ 5; *see also* Docket No. 43-1 at 9-11.  In Colorado "[a] person may disclaim, in whole or in part, any interest in or power over property[.]"  Colo. Rev. Stat. § 15-11-1205(1).  "To be effective, a disclaimer shall be in writing or other record, declare the disclaimer, describe the interest or power disclaimed, be signed by the person making the disclaimer, and be delivered or filed . . . in the manner provided for in section 15-11-1212."  *Id.* § 15-11-1205(3).[3]  The Court finds that Timothy Lankford's disclaimer satisfies all of the requirements of § 15-11-1205(3).  The disclaimer is in writing, signed by Timothy Lankford, declares the disclaimer, describes Timothy Lankford's interest as secondary beneficiary in 50% of the account, and was delivered to the personal representative of Ms. Lankford's estate.  *See* Docket No. 43-1 at 9-11.

Because Kenneth Lankford has forfeited his interest in the account and Timothy Lankford has disclaimed his 50% interest as a secondary beneficiary, the estate of Clara M. Trout and Richard W. Trout each own a 50% interest in the proceeds of the

---

[2]*St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citations omitted).

[3]Section 15-11-1212(3) provides that a disclaimer shall either be "delivered to the personal representative of the decedent's estate[,]" or, "[i]f no personal representative is then serving, a disclaimer shall be filed with a court having jurisdiction to appoint a personal representative."

account; they were each named beneficiaries entitled to 25% of the account's proceeds, and each is entitled to one half of the 50% interest that Timothy Lankford disclaimed.

### C. Attorney's Fees

As part of its prayer for relief, the Plan requests an award of reasonable attorney's fees and costs associated with initiating this action. Docket No. 1 at 5. In its answer, the Estate objected to any award of attorney's fees and costs because the Plan's "governing documents do not provide for attorney fees and costs to be deducted from the Plan account for an interpleader action." Docket No. 31 at 3. Releasing the funds held in the Court registry before the resolution of the Plan's request for attorney's fees would be premature. Accordingly, the Court will require that the Plan file a motion for attorney's fees on or before May 15, 2015.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that The Estate of Terry T. Lankford's Motion for Summary Judgment and Request for Court to Release Funds Held in the Court Registry [Docket No. 43] is **GRANTED**. It is further

**ORDERED** that Administrative Committee of the Northrop Grumman Savings Plan is dismissed from this action. It is further

**ORDERED** that The Estate of Terry T. Lankford and Kenneth Foy Lankford are hereby realigned in this action such that the Estate of Terry T. Lankford is now the plaintiff and Kenneth Foy Lankford is now the defendant. It is further

**ORDERED** that Administrative Committee of the Northrop Grumman Savings Plan is discharged from any liability concerning the death benefit proceeds due or payable from the Administrative Committee of the Northrop Grumman Savings Plan under Terry T. Lankford's Northrop Grumman Savings Plan Account.  It is further

**ORDERED** that judgment is entered in favor of the Estate of Terry T. Lankford and against Kenneth F. Lankford.  It is further

**ORDERED** that, on or before May 15, 2015, Administrative Committee of the Northrop Grumman Savings Plan shall file a motion for attorney's fees.  The Estate of Terry T. Lankford shall file a response no later than June 5, 2015.  Administrative Committee of the Northrop Grumman Savings Plan's reply, if any, shall be filed on or before June 12, 2015.  It is further

**ORDERED** that, within fourteen days of this order, Administrative Committee of the Northrop Grumman Savings Plan shall file a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that, after resolution of Administrative Committee of the Northrop Grumman Savings Plan's motion for attorney's fees and Bill of Costs, the Clerk of the Court shall disburse all funds currently held in the Court registry, including all interest accrued, less the registry fee assessment, as follows: 50% to the estate of Clara M. Trout, and 50% to Richard W. Trout.  It is further

**ORDERED** that The Estate of Terry T. Lankford shall file contact information, including street addresses, for Richard W. Trout and the estate of Clara M. Trout under Level 1 Restriction.  It is further

**ORDERED** that this case is closed.

DATED April 23, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge